(No. 55561.—
(No. 55595.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. FREDERICK RODGERS, Appellant.—THE PEO-PLE OF THE STATE OF ILLINOIS, Appellee, v. MARVIN REED, Appellant.

*Opinion filed October 22, 1982.*

Miller, Feda and Barbosa, of Elgin (Randy K. Johnson, Esq., of counsel), for appellant Frederick Rodgers.

Geister, Schnell, Richards & Brown, Chartered, of Elgin (Van R. Richards, Jr., of counsel), for appellant Marvin Reed.

Tyrone C. Fahner, Attorney General, of Springfield (Michael B. Weinstein and David Cassorla, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MORAN delivered the opinion of the court:

Pursuant to their pretrial motions, the circuit court of Kane County dismissed certain counts of the indictments returned against defendants, Marvin Reed and Frederick Rodgers, on the grounds that no evidence was presented to the grand jury in support of those charges. The appellate court reversed and remanded the causes, holding that trial courts lack authority to review the transcript of proceedings upon which an indictment is based. (98 Ill. App. 3d 999.) We granted defendants leave to appeal in these consolidated cases.

The issue is whether a trial court may properly dismiss an indictment, valid on its face, on the grounds that *no* evidence was presented in support of the charge.

In cause No. 55595, defendant Reed was charged in an 11-count indictment with theft, theft of a motor vehicle, and conspiracy to commit theft. He moved to dismiss counts IX, X, and XI, the conspiracy charges, on the grounds that they were not supported by any evidence. The trial court relied on defendant's assertion and dismissed these counts without reading the grand jury transcript. Consequently, this transcript was never made a part of the record and is not available for review.

In cause No. 55561, defendant Rodgers was indicted by a different grand jury on the charges of theft, theft of a motor vehicle, and conspiracy to commit theft. He appeared before a different judge and moved to dismiss count III, the conspiracy charge, for lack of any evidence. After reviewing the grand jury transcript, the court granted defendant's motion. In reversing both causes, the appellate court determined that prior case law and considerations of judicial economy precluded review of the evidence presented to the grand jury.

The State contends that trial courts lack authority to inquire into the transcript of proceedings upon which an

indictment is based. It argues that case law precludes any consideration of the adequacy or sufficiency of the evidence presented to the grand jury in support of the charge. Further, the need for a prompt administration of justice prohibits any review of the grand jury transcripts.

Historically, the extent to which defendants have been afforded procedural safeguards during grand jury proceedings has been substantially limited. "Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial." (*United States v. Calandra* (1974), 414 U.S. 338, 349, 38 L. Ed. 2d 561, 572, 94 S. Ct. 613, 620.) Thus, for example, it has been held that an indictment may not be attacked on the ground that it was based on evidence seized in violation of the fourth amendment (*United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613); that it was based on hearsay evidence (*Costello v. United States* (1956), 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406; *People v. Creque* (1978), 72 Ill. 2d 515, *cert. denied* (1979), 441 U.S. 912, 60 L. Ed. 2d 384, 99 S. Ct. 2010); that it was based on some incompetent testimony (see *People v. Jones* (1960), 19 Ill. 2d 37, 41); or that no evidence as to an essential element of the offense was presented to the grand jury. (See Annot., 59 A.L.R. 567, 579 (1929), and cases cited therein. But see *Brady v. United States* (8th Cir. 1928), 24 F.2d 405, 408 (indictment will be quashed unless some evidence on each element of the offense is presented to the grand jury).) In addition, as noted by the State, there are numerous cases which indicate that a court will not consider the adequacy or sufficiency of the evidence. *Costello v. United States* (1956), 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406; *People v. Creque* (1978), 72 Ill.

2d 515, *cert. denied* (1979), 441 U.S. 912, 60 L. Ed. 2d 384, 99 S. Ct. 2010; see *People v. Whitlow* (1982), 89 Ill. 2d 322, 331.

Over the years, courts have carved out certain exceptions to the general rule that a defendant may not challenge the validity of an indictment returned by a legally constituted grand jury. One of the well-established exceptions involves situations in which all of the witnesses testifying before the grand jury are legally incompetent. (*E.g., People v. Jones* (1960), 19 Ill. 2d 37, 41-42; *People v. Lambersky* (1951), 410 Ill. 451.) Defendants have also been permitted to challenge indictments where there are clear allegations of prosecutorial misconduct (*People v. Linzy* (1979), 78 Ill. 2d 106, 109; *People v. Sears* (1971), 49 Ill. 2d 14; see generally Granelli, *Defense Peers Into Grand Jury*, Nat'l L.J., June 22, 1981, at 1); where the prosecutor's unsworn testimony is the only evidence presented to the grand jury (*United States v. Hodge* (5th Cir. 1974), 496 F.2d 87); where the indictment is based on mere suspicion (*People v. Hodgson* (1957), 6 Misc. 2d 683, 684, 167 N.Y.S.2d 291, 292); and when the grand jurors do not hear all of the evidence presented (*People v. Fujita* (1974), 43 Cal. App. 3d 454, 478, 117 Cal. Rptr. 757, 771, *cert. denied* (1975), 421 U.S. 964, 44 L. Ed. 2d 451, 95 S. Ct. 1952; but see *United States v. Lang* (7th Cir. 1981), 644 F.2d 1232). In a recent opinion, one jurisdiction intimated that grand jury witnesses may soon be permitted to have counsel present during the grand jury proceedings if prosecutors fail to fairly phrase questions posed to the witnesses. *United States v. Martellano* (7th Cir. 1982), 675 F.2d 940.

The cases which the State cites generally preclude any inquiry into the adequacy or sufficiency of the evidence. However, the cited cases do not address the precise question with which we are confronted: May the grand jury return an indictment unsupported by *any* evi-

dence, as opposed to inadequate or incompetent evidence? Both the appellate court and the State recognize this distinction, but believe that it is "one without a difference." We disagree.

"A grand jury's function is to return an indictment against a person only when the evidence presented to it indicates that he has committed a public offense. It is no Star Chamber tribunal empowered to return arbitrary indictments unsupported by any evidence." (*Greenberg v. Superior Court* (1942), 19 Cal. 2d 319, 321, 121 P.2d 713, 715.) Indeed, the grand jury is expected to indict an accused only if it determines that there is probable cause for believing that he or she has committed an offense. (Ill. Rev. Stat. 1977, ch. 38, par. 112—4(d).) To return a true bill where there is absolutely no evidence connecting the accused to the offense charged would be an abdication of the important responsibility with which the grand jury has been entrusted. See *United States v. Costello* (2d Cir. 1955), 221 F.2d 668, 677, *aff'd on other grounds* (1956), 350 U.S. 359, 100 L. Ed. 397, 76 S. Ct. 406.

In the recent case of *People v. Whitlow* (1982), 89 Ill. 2d 322, the defendants alleged that no evidence of criminal conduct, in support of the charges, was presented to the grand jury. We undertook to review the grand jury transcript and determined that there was evidence from which defendants' illegal conduct could be inferred. Having determined that there was some evidence in support of the charges, this court declined to inquire into the adequacy of that evidence. Thus, contrary to the State's assertion, *Whitlow* impliedly countenanced the type of review now requested.

Further, although there is a split of authority on this question, a number of jurisdictions have held that an indictment will be quashed where there is no evidence which tends to support the charges. (*E.g., Brady v.*

*United States* (8th Cir. 1928), 24 F.2d 405; *People v. Hodgson* (1957), 6 Misc. 2d 683, 167 N.Y.S.2d 291; *Greenberg v. Superior Court* (1942), 19 Cal. 2d 319, 121 P.2d 713; see Annot., 59 A.L.R. 567 (1929); 42 C.J.S. *Indictments & Informations* sec. 24(c)(1) (1944).) Indeed, many of the same decisions rejecting challenges to the sufficiency of the evidence suggest that an indictment unsupported by any evidence will be dismissed. See Kamisar, LaFave & Israel, Modern Criminal Procedure 1049 (5th ed. 1980).

To require an individual to defend himself against an empty charge is to ignore one of the primary functions of a grand jury, which is to act as a "shield" against arbitrary prosecutions. (Kamisar, LaFave & Israel, Modern Criminal Procedure 1015 (5th ed. 1980).) "Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." *Wood v. Georgia* (1962), 370 U.S. 375, 390, 8 L. Ed. 2d 569, 580, 82 S. Ct. 1364, 1373.

We do not find persuasive the State's further argument that the need for a prompt administration of justice precludes any review of the grand jury transcripts. Concededly, there are important interests in securing the prompt and efficient disposition of cases. However, attaining efficiency at the expense of justice is not an accomplishment to be admired. And it is no answer that an accused's innocence may be vindicated at trial. "For a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public

mind, the blot on a man's escutcheon, resulting from such a public accusation of wrongdoing, is seldom wiped out by a subsequent judgment of not guilty. Frequently, the public remembers the accusation, and still suspects guilt, even after an acquittal." *In re Fried* (2d Cir. 1947), 161 F.2d 453, 458-59, *cert. dismissed* (1947), 332 U.S. 807, 92 L. Ed. 384, 68 S. Ct. 105.

Accordingly, we hold that a trial court has inherent supervisory authority to review grand jury transcripts and determine whether any evidence was presented which tends to connect the accused to the offense charged. (*Cf. People v. Linzy* (1979), 78 Ill. 2d 106, 109 (trial court has supervisory authority to review grand jury transcripts pursuant to allegations of prosecutorial misconduct); *People v. Lawson* (1977), 67 Ill. 2d 449, 455 (trial courts are authorized to dismiss an indictment where there is a clear denial of due process, even though this is not a statutorily authorized ground for dismissal).) In addition, when it is alleged that no evidence was presented to the grand jury in support of the charges, the State shall direct the trial judge's attention to any direct or circumstantial evidence in the transcript from which an inference of criminal conduct could be derived. This procedure of shifting the burden to the State will satisfy the interests of judicial economy since it will eliminate the need for the trial judge to review the entire transcript. Nor will it be necessary to determine whether any evidence was presented as to each element of the offense. We require only that there be some evidence relative to the charge.

A related question is whether or not the charges dismissed in the instant cases were supported by any evidence. The dismissed count of the indictment returned against defendant Rodgers alleged that he conspired with defendant Reed and Donald Lawson to commit theft, and that he purchased a 1977 Cadillac in further-

ance of the agreement. Under section 8—2(a) of the Criminal Code of 1961, "[a] person commits conspiracy when, with intent that an offense be committed, he agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator." Ill. Rev. Stat. 1977, ch. 38, par. 8—2(a).

An investigator for the Illinois Department of Law Enforcement testified that Lawson operated a stolen car ring, dealing in luxury vehicles. In order to conceal the identity of a vehicle, he would alter the identification number plate on the dashboard. Normally, one of the last three digits in a plate would be erased, and replaced with a number "one." Lawson eventually became the target of an investigation, and pursuant to a search warrant, the police recovered from his home a number of business records and blank license applications. One document seized was an application for Illinois license plates in the name of Frederick Rodgers. The vehicle described in the application was a 1977 Cadillac, and it was subsequently determined that the car was stolen. The last digit in the vehicle identification number had been changed to a "one."

The witness testified that he had interviewed Rodgers regarding his acquisition of the vehicle. At that time, the defendant claimed that he could not recall from whom he purchased the car. He said that he was approached by the seller at O'Hare airport and bought the car, for which he paid in cash, shortly thereafter. Subsequently, defendant provided a receipt naming the person from whom he allegedly purchased the vehicle, but the "seller" could not be located.

Further evidence indicated that defendants Rodgers and Reed are currently employees of the Department of

Corrections, and at one time worked together at the same correctional facility. Reed acquired a number of stolen vehicles from Lawson's employee, which apparently were later licensed to Department of Corrections employees.

From our review of this transcript in cause No. 55561, we find that some evidence was presented to the grand jury in support of count III. We therefore hold that the trial court erred in dismissing this count.

The dismissed counts IX, X, and XI of the indictment returned against defendant Reed in cause No. 55595 alleged that he conspired with various individuals to commit theft. The transcript was never made a part of the record and is not available for review. For this reason, we are unable to make a determination as to whether or not there was any evidence in support of the charges. Consequently, it is necessary to remand the cause to the trial court with directions to determine whether there is some evidence connecting the defendant to the counts in question.

We feel the need to emphasize that, on remand in cause No. 55595, the trial court will not be required to read the entire transcript. The burden is on the State to point out where there is any direct or circumstantial evidence from which an inference of criminal conduct could be derived to support the charges.

For the reasons stated herein, rather than those stated by the appellate court, the judgment of the appellate court in cause No. 55561 is affirmed. The judgments of the appellate and circuit courts in cause No. 55595 are vacated and the cause is remanded to the circuit court of Kane County with directions to proceed as herein provided.

> 55561 — *Judgment affirmed.*
> 55595 — *Judgments vacated; cause*
> *remanded, with directions.*