THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH BAKER, Defendant-Appellant.

First District (3rd Division)   No. 82—582

Opinion filed August 1, 1984.

Steven Clark, of State Appellate Defender's Office, and Mark W. Solock, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Maria Elena Gonzalez, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

In a jury trial the defendant, Kenneth Baker, was found guilty of murder and home invasion and was sentenced to terms of 35 years and 25 years respectively, the sentences to run consecutively. On appeal, Baker claims that the trial court erred in denying his petition for discharge based on statutory right to speedy trial filed January 5, 1982. He was arrested February 14, 1981, and his petition alleged that more than 120 days had passed since he indicated that he was ready for trial and that he was entitled to discharge for want of prosecution as provided in section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 103—5). That statute mandates that every person in custody "be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, ***." The controlling question in determining whether defendant was entitled to discharge under the speedy trial statute is whether the delay of his trial was occasioned by the defendant; if so, he is not entitled to a discharge.

(*People v. Leonard* (1974), 18 Ill. App. 3d 527, 310 N.E.2d 15.) Between defendant's arrest and the date of his motion for discharge there were 301 calendar days. During this period there were numerous continuances, some on motion of defendant, some on motion of the State; others were by agreement. The continuances by agreement and upon defendant's motion were, of course, delays chargeable to defendant. When the delay is caused by the defendant, the 120-day period starts anew from the date to which the defendant has caused a delay. *People v. Lee* (1969), 44 Ill. 2d 161, 254 N.E.2d 469.

Application of these principles to this case makes the court proceedings of August 11, 1981, critically important. Defendant contends that "although the Memorandum of Orders indicates that this date was B/A [by agreement] the transcript of the proceedings on that date clearly indicate [*sic*] that this continuance cannot be attributable to the defendant." The State does not contest defendant's entitlement to a discharge if this statement were true. However, the State asserts that it is not true, and we agree.

The transcript of proceedings for August 11, 1981, shows the following:

"THE COURT: I believe that in this matter most of the discovery has been completed.

[DEFENSE COUNSEL]: We are ready for trial. To be set for trial.

[ASSISTANT STATE'S ATTORNEY]: The answer will be the defendant will—

THE COURT: Affirmative defense for the purpose of the State?

[DEFENSE COUNSEL]: That is correct. Self-defense matter.

THE COURT: This matter will be a bench or jury?

[DEFENSE COUNSEL]: Jury, Judge.

THE COURT: Jury requested. I will give you a longer date because I am tied up. That is a case involving three policemen which can be a month trial. Right after that I got another murder trial. I can give you a tentative date but you will have to check with the State's Attorney to find out what our position is at that particular time. I cannot justifiably say this is an absolute date. Accordingly, I will suggest September 21st, if that is satisfactory, with subpoenas, for purpose of trial.

[DEFENSE COUNSEL]: Fine.

THE COURT: By agreement. I will ask you prior that you check with the State's Attorney so we can know where we are at."

It will be noted that Judge Arthur J. Cieslik, who was presiding at the proceedings on August 11, 1981, concluded that the continuance was by agreement and stated so on the record. To this there was no objection. The hearing on defendant's petition for discharge was also before Judge Cieslik who, in denying the petition, said that after examining the transcript of proceedings, the sheets he prepared at the time the case was heard and signed at the close of the day, as well as the common law record, that "by agreement" was a proper statement of the record and that accordingly, the motion for discharge was not well taken and was denied.

The order of continuance on August 11, 1981, in the common law record is unambiguous and clearly by agreement. After a review of the transcript of proceedings upon which defendant relies, the trial court found that the common law record spoke the truth. The statement of defense counsel in the transcript of proceedings can be interpreted to mean that defendant was ready for trial or to mean that he was ready to have his case set for trial. There was no objection when the court indicated that the case would be given a future date for trial and when the date was set, defense counsel said, "Fine."

■ Defendant relies on *People v. Beyah* (1977), 67 Ill. 2d 423, 367 N.E.2d 1334, where our supreme court held that a continuance was not a delay occasioned by the defendant. In that case, the court held that no waiver of the right to a speedy trial occurred merely because of defense counsel's failure to object to the court's entry charging a continuance to him. However, the record in *Beyah* showed that the trial judge and counsel for the parties were actually engaged in the trial of another case. Similar considerations buttressed the appellate court's ruling that a continuance was not occasioned by the defense in *People v. Parker* (1978), 59 Ill. App. 3d 302, 375 N.E.2d 465. In *Parker*, the common law record read "by agreement" but the undisputed evidence was that defense counsel was not in court on the date the continuance was ordered. Further, the trial judge knew that a jury trial was in progress. These cases are thus distinguishable from the case at bar. The determination of accountability for delay rests in the judgment of the trial court and its decision should be sustained on appeal unless it is clearly shown that the court's discretion was abused. (*People v. Parker* (1978), 59 Ill. App. 3d 302, 304.) We cannot say on this record that the trial judge misinterpreted what was happening before him, mistakenly recorded the continuance as by agreement, and erred in denying the petition for discharge. *Selvaggio v. Kickert School Bus Line, Inc.* (1964), 46 Ill. App. 2d 398, 197 N.E.2d 128.

Defendant was charged in a five-count information. The first count charged that defendant murdered Ira E. Clark in violation of section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1)). The second count charged that defendant murdered Ira E. Clark in violation of section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(2)). The third count charged that defendant murdered Ira E. Clark while committing a forcible felony (home invasion) in violation of section 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)). The fourth count charged defendant with committing the offense of home invasion in violation of section 12—11(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(2)). The fifth count charged defendant with committing the offense of armed violence. Prior to trial the State nol-prossed the armed violence count.

■ Defendant contends that home invasion is a lesser included offense of felony murder, and that therefore his conviction of the lesser offense must be vacated, citing *People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490. The weakness of defendant's argument is that with three possible bases for the general guilty of murder verdict, it is impossible to state that the verdict was based on the felony murder count alone. If a jury returns a general verdict of guilty when the defendant is charged with several counts of an offense, defendant will be deemed guilty on each count. (*People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 418 N.E.2d 131.) Indeed, defendant's reply brief "concedes that he was convicted of murder in each of three manners possible." The jury's guilty verdict indicates an intention to convict defendant of murder under sections 9—1(a)(1) and 9—1(a)(2) (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), 9—1(a)(2)), as well as under the felony murder section 9—1(a)(3) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)). No reason is advanced why a murder verdict on the basis of sections 9—1(a)(1) and 9—1(a)(2) should not stand with the conviction for home invasion.

Defendant claims numerous instances of prosecutorial misconduct. However, under the harmless error doctrine, they do not singly or collectively constitute reversible error unless the error or errors resulted in substantial prejudice to the defendant and can be said to have contributed to the guilty verdict. *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Hilliard* (1982), 109 Ill. App. 3d 797, 441 N.E.2d 135.

■ Defendant argues that the evidence here was sufficiently

close to put the case beyond the reach of the harmless error doctrine. The State's case was simple and straightforward. Baker went on a rampaging jealous rage, culminating in his kicking open the door of Gwendolyn Thompson's apartment and entering with a knife in his hand. Present in the apartment were Gwendolyn, her sister, Charlotte Jackson, Ira Clark, the deceased, and Stephanie Watson, defendant's common law wife. Defendant overpowered Clark, who was unarmed, and stabbed him to death. This was the substance of the testimony of both Gwendolyn and Charlotte. Defendant and Stephanie testified that defendant was peacefully admitted into the apartment, that Ira came at him armed with a tire iron or crowbar and that defendant stabbed him in self defense. The State's case, however, was supported by irrefutable physical evidence of defendant's violence: the damaged apartment door, which had to be repaired; photographs of the depredation of Stephanie's apartment, which she shared with defendant; and of her coat, which defendant had cut to pieces. Stephanie, in her testimony for her common law husband, was thoroughly impeached. For example she denied that defendant had struck her during the events leading to the killing, then admitted that she did have a black eye but claimed it was the result of defendant's punch three weeks earlier. No motive for testifying other than to the truth was shown for Gwendolyn and Charlotte. The testimony of these two credible eyewitnesses, corroborated by the physical evidence, compels the conclusion that defendant is guilty and that the judgment is right. It will not be reversed for errors which do not affect the substantial merit of the case. (*People v. Dixon* (1948), 400 Ill. 449, 81 N.E.2d 257.) We have examined all of the prosecutorial conduct claimed by defendant to have denied him a fair trial. The jury by its verdict rejected defendant's claim of self defense. We cannot say that the misconduct of the assistant State's Attorney contributed to this verdict. A point-by-point discussion of each of the numerous prosecutorial misconduct errors would be cumulative and is unnecessary, but we will comment on some because they represent pointless misconduct which occurs too frequently.

■ Defendant contends that he was denied a fair trial when the prosecutor on cross-examination asked impeaching questions of defendant and defense witness Stephanie Watson, then failed to complete the impeachment with proof of the act denied by the witness. This was clearly error, but we hold that the unsupported innuendos arising from the questions do not require a reversal when on the basis of properly admitted evidence the guilt of the defendant is manifest.

■ Defendant points out several instances of impropriety in the

State's closing argument, including a comment about events that allegedly occurred during the trial but not on the record, which was obviously improper. The test in determining whether remarks of the prosecutor during closing argument constitute reversible error is whether the comments were such that if not made the jury might have reached a different result. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.) As indicated above, we find the guilt of the defendant manifest.

■ Defendant contends that the trial court erred when, on the third day of trial, the court denied his motion to amend his list of witnesses submitted pursuant to Supreme Court Rule 413(d) (87 Ill. 2d R. 413(d)) to include the name of his mother, Laverne Baker. At the commencement of the trial the court had ordered the exclusion of witnesses, and Mrs. Baker had been in the courtroom throughout the trial. The trial judge denied defendant leave to add his mother to the list of witnesses. In defendant's offer of proof it appears that the mother's testimony was expected to rebut the presumption of guilt arising from defendant's flight from the city, and explain that defendant fled because he was afraid the police would kill him. There was no showing why the mother was not put on the list originally. Whether to allow one who has been in the courtroom in violation of the trial court's order to testify is within the sound discretion of the trial court and the court's ruling will not be disturbed unless the party offering the witness was deprived of material testimony without his fault. *People v. Bridgeforth* (1972), 51 Ill. 2d 52, 63, 281 N.E.2d 617, *appeal dismissed* (1972), 409 U.S. 811, 34 L. Ed. 2d 66, 93 S. Ct. 100.

■ During the cross-examination of Jonathan Regenberg, a rebuttal witness, defense counsel moved for the production of Regenberg's logbook. The prosecutor said the information in the logbook had already been produced. A recess was declared to determine if the logbook contained relevant information not previously produced by the State. At the end of the recess, the trial judge determined that it did not, and so informed the jury:

> "Ladies and Gentlemen, for purposes of this record and for the record, let the record show that the request heretofore made by counsel was unreasonable and dilatory in nature; that there was no basis at law or in fact for the delay that was required of this case."

Defendant claims that this was a rebuke of counsel which should not have been delivered in front of the jury. We note that the dispute arose before the jury and the jury was entitled to know its resolution. We fail to see prejudice to the defendant.

■ Lastly, defendant claims that the trial court erred in excusing a prospective juror. Illinois statutory law provides that "It shall be sufficient cause of challenge of a petit juror *** that he is a party to a suit pending for trial in that court." (Ill. Rev. Stat. 1981, ch. 78, par. 14.) The juror had a case pending in the building court of the circuit court of Cook County. He was removed by the trial judge, who said:

> "I believe the statute provides if anybody has a case in Cook County they are excused as prospective jurors. And accordance with that statute I excused him, okay."

The court's interpretation of the word "court" is supported by statutory definitions of the word "court." (Ill. Rev. Stat. 1981, ch. 40, par. 1202; Ill. Rev. Stat. 1981, ch. 37, par. 701—8; Ill. Rev. Stat. 1981, ch. 116, par. 43.103.) We agree with it.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.